Bv the OomtT. Sai-tofobd, J.
The plaintiff’s first point is undoubtedly correct, that upon the assignment of dower to the widow of James Walker in the premises in question, the seizin in fact of James M. R. Walker, (or of the heirs of James W., if the partition were to be laid out of view,) was displaced, and the dowress was in, by relation, from the time of the death of her husband. But we think the conclusions which the plaintiff derives from this proposition are entirely erroneous.
1. As to its effect on the partition. The assignment of dower was made by the commissioners in partition, as a part of their supposed duty under the order of the court in the partition suit. As a judicial act, the whole thing was nugatory, because it was not authorized by the statute of partition then in force. The assignment derived its vitality, not from the order of the court directing the commissioners to make it, nor from the commissioners signing their report in which lands were allotted for dower, nor from the judgment of the court confirming the report and directing the partition to be made and the dower to be allotted accordingly. But the assignment of dower, thus made by the commissioners without authority, became valid and obligatory upon the heirs, by the widow’s entry upon the lands assigned, and by the heirs’ subsequent adoption and ratification of the commissioners’ proceedings. We cannot infer from the interlocutory judgment of the court, which appointed the commissioners and directed both the partition and the assignment *392 of dower, an authority from the heirs, who were parties to the suit, to the commissioners to make as their agents, a parol assignment of dower, which of itself would defeat the principal object of the partition suit. The court, acting, it is true, for all the parties, made an erroneous order respecting the dower. On holding that order to be of no effect, we have no right to imply from it an authority for the officers of the court to do by parol and in pais, what the parties never intended should be thus accomplished.
Their subsequent adoption of the partition and assignment of dower, doubtless, precluded them from disturbing the latter; but this is on a very different ground from that of a previous authority to make the assignment. The result of our reasoning is, that when the judgment of partition was made, there had been no assignment of dower effected ; the heirs were still seized in fact, and the partition between them became effectual, unless the proceedings were defective, because of the infancy of the plaintiff. Before proceeding to that subject, we ought to add, that if the assignment of dower were held to have become operative simultaneously with the judgment of partition, it could not have the effect to defeat the latter. Although the seizin of the heirs in the lands allotted for dower became divested at the instant of the judgment, yet during that instant they were seized, and that was sufficient to support the partition.
2. The fact, that Mrs. Eowler was an infant, and appeared in the suit by an attorney, instead of a guardian, rendered the proceedings irregular and voidable, but it did not make them void. Without reference to the question as to the general or limited jurisdiction of the mayor’s court, or to the point that the proceeding was wholly of a statutory creation, and not a branch of the common law jurisdiction of the court; it is sufficient to say, that the act for the partition of lands then in force, did not make the appointment of a guardian for infants a preliminary to the court’s entertaining the suit against them. Infants were to be notified and served in the first instance. (1 Rev. Laws 507, 511, § 2, 8.) Jurisdiction was thus acquired, irrespective of infancy, and an omission subsequently to appoint a guardian for an infant, did not affect the jurisdiction of the court to pro *393 nounce a judgment in the suit. On a writ of error, such an omission might have been fatal to the judgment, but never in any collateral suit or proceeding.
3. It was contended that James M. R. Walker, who became entitled to the premises in question in severalty, by the judgment in partition, subject to the widow’s life estate in the whole premises, never had any actual seizin of the same, and on his death without issue, the same descended to the heirs of his father, as the person last seized, of whom the plaintiff is one. And further, that the conveyance made by the committee of the estate of James M. R. Walker, did not transmit the estate to his grantee.
Although according to the common law, James M. R. W. was not seized in fact, from 1814 until his death, and therefore was not a stock of descent in respect of the lands in question, his right and title were alienable. They were a vested estate in the land itself, which he could convey absolutely. He had the freehold in law, although not in deed, (Litt. Ten. § 44T, 448 ;) and such freehold would pass by his deed. (Co. Litt. 266 b, and 53 b; Shep. Touch. 222, 238.) The plaintiff’s error on this point consists in assuming, that because the descent was suspended during the pendency of the life estate, therefore, the power of alienation was suspended also. The latter consequence never ensued, when the reversion was vested in interest, although the feudal rules of descent, from time immemorial, established the former doctrine.
The plaintiff has failed to show any existing title to the premises, and there must be judgment for the defendants.